IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| M.L., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | 1:21-CV-21 (TQL) |
| | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

Plaintiff filed this Social Security appeal on January 25, 2021, challenging the Commissioner's final decision denying her disability application, finding her not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Both parties consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to, ordering the entry of judgment. (Doc. 6; Clerk's Entry, Jan. 27, 2021). The parties may appeal from the judgment, as permitted by law, directly to the United States Court of Appeals for the Eleventh Circuit. 28 U.S.C. § 636(c)(3). Jurisdiction arises under 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.

*Legal Standard*

In reviewing the final decision of the Commissioner, the Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, which is defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Brito v. Comm'r, Soc. Sec.*

*Admin.*, 687 F. App'x 801, 803 (11th Cir. 2017) (per curiam) (first citing *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); and then quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citations omitted).

"Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "In contrast, the [Commissioner's] conclusions of law are not presumed valid. The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-46 (citations omitted).

Under the Regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 416.920. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his or her ability to carry out basic work activities. Third, the Commissioner evaluates whether the claimant's impairments meet or equal listed impairments in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity (RFC) will allow a return to past relevant work. Finally, the Commissioner determines whether the claimant's RFC, age, education, and work experience allow for an adjustment to other work.

*Administrative Proceedings*[1]

Plaintiff filed an application for Supplemental Security Income on May 31, 2018. (Tr. 16, 197). In her application, Plaintiff alleged an initial onset date of April 13, 2018. (Tr. 16, 197). The Social Security Administration denied Plaintiff's claim initially and upon reconsideration. (Tr. 16, 268, 274). Plaintiff requested a hearing (Tr. 280) and appeared before an Administrative Law Judge (ALJ) on July 13, 2020 (Tr. 16, 136).

In a hearing decision dated August 28, 2020, the ALJ determined Plaintiff was not disabled. (Tr. 16-26). The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of review. (Tr. 1-4).

**Statement of Facts and Evidence**

Plaintiff was born on July 4, 1978 (Tr. 331), and she was thirty-nine (39) years old at the time she filed her application (Tr. 25). The ALJ found that Plaintiff had no past relevant work experience. (Tr. 24).

The ALJ determined that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease with fusion and osteoarthritis, low vision, asthma, cardiac dysrhythmia with pacemaker and hypertension, gastroesophageal reflux disease and gastropathy, anemia, peripheral arterial disease, depression with anxiety, and obesity. (Tr. 19). The ALJ determined that Plaintiff suffered from the minor impairments of restless leg syndrome, acute sprained ankle, and vitamin D deficiency, but that none of them required anything more than basic medical care. *Id*.

Considering the evidence relating to all of Plaintiff's impairments, individually and in combination, the ALJ found no evidence that the combined clinical findings from such impairments reached the level of severity contemplated in the listings. (Tr. 19-21).

---

[1] Plaintiff self-reported that the instant claim is her fourth application for disability. (Tr. 1099); (*see also* Tr. 197).

Considering the "paragraph B" criteria, the ALJ found that Plaintiff had a mild limitation in her ability to understand, remember, or apply information; a mild limitation in her ability to interact with others; a moderate limitation in concentrating for complex tasks; and a mild limitation in her ability to adapt or manage herself. (Tr. 19-20). Because the ALJ found that Plaintiff's medically determinable mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found that the "paragraph B" criteria were not satisfied. (Tr. 20). The ALJ found that the evidence failed to establish the presence of the "paragraph C" criteria. *Id.*

Considering the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work, except that she could lift and carry ten (10) pounds occasionally and ten (10) pounds frequently; could sit two hours/stand six hours and may alternate sitting/standing for five minutes at thirty (30) minute intervals, which is an incidental posture shift that would not cause significant time off task; could occasionally climb ramps, climb stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, and scaffolds or have similar hazard exposure; could frequently use her upper extremities and occasionally use her lower extremities for pushing or pulling and operating controls; could drive but could never work with vibrating hand tools or on surfaces; and could occasionally have atmospheric exposure to dust or smoke. (Tr. 21).

Considering Plaintiff's age, education, work experience, and RFC, the ALJ also determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25-26).

Ultimately, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time since May 31, 2018, the date Plaintiff's application was filed. (Tr. 26).

**DISCUSSION**

Plaintiff argues that the ALJ erred because he (1) failed to find the existence of the alleged primary severe impairment at step two, (2) failed to properly consider the opinion of the treating physician and accordingly failed to properly evaluate Listing 4.05, and (3) failed to include a limitation in Plaintiff's assessed RFC which addressed Plaintiff's low vision. (Doc. 16).

***Step Two and the Primary Severe Impairment***

Plaintiff argues that the ALJ erred at step two because he failed to find that Plaintiff's alleged sick sinus syndrome was severe. (Doc. 16, pp. 4-5).

Step two "'acts as a filter' in that the 'finding of any severe impairment . . . is enough to satisfy the requirement of step two[.]'" *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (per curiam) (first alteration in original) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Further, no related step four-error occurs when an ALJ considers all of a claimant's symptoms and impairments, including those found to be non-severe, along with the claimant's medical records and testimony, and all opinion evidence in determining a claimant's RFC. *Id.* (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987)).

The ALJ determined at step two that Plaintiff had the severe impairment of cardiac dysrhythmia with pacemaker and hypertension, among others. Having found at least one severe impairment at step two, the ALJ continued in the sequential evaluation. This was all that was required at step two.

Further, the ALJ expressly considered the evidence related to Listing 4.05, addressed in more detail, *infra*, and in so doing, explicitly considered Plaintiff's cardiology treatment records. The ALJ found that Plaintiff's cardiology treatment records established that Plaintiff's arrhythmias remained stable with medications following atrial tachycardia ablation, that she had a permanent pacemaker, that her most recent cardiac stress test showed normal perfusion, that Plaintiff's left

ventricular ejection fraction was normal at 70%, that diagnostic studies revealed normal coronary arteries, and that Plaintiff's cardiologist noted regular cardiac rate and rhythm with no murmurs, rubs, gallops, or clicks and normal pulses of all extremities. (Tr. 19). After considering Plaintiff's non-severe impairments, in combination with Plaintiff's severe impairments, the ALJ reduced Plaintiff's RFC to sedentary work with additional limitations. (Tr. 21). Having reviewed the evidence upon which the ALJ based Plaintiff's RFC, the Court finds that Plaintiff's RFC is supported by substantial evidence.

***Treating Physician's Opinion and Listing 4.05***

Plaintiff asserts that the ALJ erred because he failed to consider the opinion of Plaintiff's treating cardiologist, and thus, failed to consider if Plaintiff's sick sinus syndrome met or equaled Listing 4.05. (Doc. 16, pp. 5-7). Plaintiff also alleges that the ALJ failed to consider the statement of Dr. Oddis, which statement was submitted after Plaintiff's hearing. *Id.* at 7.

At the start of Plaintiff's hearing on July 13, 2020, the ALJ asked whether the record was complete, and counsel confirmed that it was complete. (Tr. 137). At the conclusion of the hearing, the ALJ again asked whether the record was complete, specifically questioning why counsel had not requested that the evidence from a then-upcoming appointment at Emory University, relating to Plaintiff's cardiology issues, be added to the file. (Tr. 168-69).

Counsel clarified that the appointment was with Plaintiff's local cardiologist to determine whether to send Plaintiff to Emory for referral. (Tr. 169). After learning the cardiologist was Dr. Oddis, the ALJ noted that Plaintiff had seen Dr. Oddis on April 8, 2020, and as such, the ALJ assumed the upcoming appointment with Dr. Oddis would "for the most part" be a repeat of the April 8 visit. (Tr. 170-71). As a result, the ALJ was not specifically following up on Dr. Oddis but left open the possibility that "something special" might "come[ ] up." *Id.*

Plaintiff subsequently submitted the post-hearing opinion of Dr. Oddis, but the ALJ found that it did not meet the requirements of 20 C.F.R. § 404.935(3)(iv) as to timeliness or materiality, finding that counsel did not actively and diligently seek to complete the record. (Tr. 16). Even so, the ALJ found that a survey of the opinion revealed factual inconsistency with the existing record, particularly Exhibit B26F at pages 6-8. *Id.*

Exhibit B26F shows that on April 8, 2020, Plaintiff's heart had a regular rate and rhythm without murmurs, rubs, gallops, or clicks; her pulses were normal in all four extremities; and the detailed cardiovascular examination found no irregularities. (Tr. 2433-34). In regard to Plaintiff's sick sinus syndrome, that issue was "[r]esolved with [pacemaker] in situ" and the plan was to "continue to monitor."  (Tr. 2434). Plaintiff was instructed to schedule a follow-up in two months, to schedule a pacemaker appointment in two months, and to start a medication for her hypotension. (Tr. 2435). In contrast, Dr. Oddis found in the post-hearing opinion that Plaintiff's "POTS" was "severe, resulting in dizziness and syncope" and that Plaintiff met Listing 4.05. (Tr. 2656). A review of the evidence shows that, to the extent that the ALJ considered it, substantial evidence supports the ALJ's decision to discount Dr. Oddis' opinion.

On March 16, 2018, a cardio catheterization found normal results. (Tr. 569). Physical examinations of Plaintiff on April 26, 2018, May 21, 2018, and May 30, 2018 all revealed normal cardiovascular and heart findings. (Tr. 597, 580, 592, respectively). The same findings were made on June 6, 2018 (Tr. 638), August 27, 2018 (Tr. 1032), October 3, 2018 (Tr. 1135), and December 4, 2018 (Tr. 1388). On May 17, 2018, Plaintiff denied any chest pains or palpitations and her physical exam revealed normal heart findings. (Tr. 722-23). On November 13, 2019, Plaintiff reported that her palpitations were not bothersome or limiting but were only noticeable, and she denied any chest pain, palpitations, or syncope. (Tr. 2445).

Numerous tests and evaluations also revealed normal or essentially normal results. At a cardiovascular consultation appointment on August 15, 2018, it was noted that no acute abnormalities were found on her EKG, that she had no problems with syncope, and that Plaintiff's heart catheterization in March 2018 revealed normal results. (Tr. 1381). At Plaintiff's outpatient evaluation for surgery on August 27, 2018, she had regular rate and rhythm and normal peripheral perfusion. (Tr. 1032). Similar findings were made on discharge from laparoscopic hernia surgery on September 15, 2018 (Tr. 937), and at her follow up on October 1, 2018 (Tr. 931).

Plaintiff presented with complaints of chest pain and palpitations on several occasions but normal or near normal results were found on examination. On February 6, 2019, Plaintiff presented with complaints of chest pain, but on examination, she had normal cardiovascular findings. (Tr. 1175, 1178). An echocardiogram performed that same day found that she had a stable chest with no acute abnormality noted, with mild left ventricular hypertrophy and grade I diastolic dysfunction. (Tr. 1181-82). An echocardiogram on May 15, 2019 found normal results. (Tr. 2475).

On March 11, 2019, Plaintiff presented with complaints of palpitations, but on examination she had normal cardiovascular findings, and it was also noted that Plaintiff's then-recent echocardiogram found normal LVEF with no pericardial effusion. (Tr. 1168, 1171). Similar findings were made on January 14, 2019 (Tr. 1195), June 5, 2019 (Tr. 1699), and February 12, 2020 (Tr. 1809, 1818). Finally, Plaintiff complained of palpitations on April 8, 2020, but on examination she had normal cardiovascular findings. (Tr. 2430, 2433-34).

The ALJ rejected Dr. Oddis' post-hearing opinion for being untimely. That decision is consistent with the Regulations because Plaintiff made no showing that the agency's actions misled her; that she had a physical, mental, educational, or linguistic limitation that prevented her from submitting the evidence earlier; or that some other unusual, unexpected, or unavoidable

circumstance beyond her control prevented her from submitting the evidence earlier. 20 C.F.R. §§ 416.1435(b), (b)(3)(iv). Nor has Plaintiff attempted to make that showing in this Court. (*See* Doc. 16, pp. 5-7). The Court finds that the ALJ was authorized to find Dr. Oddis' opinion untimely.

Further, the ALJ expressly discussed the completeness of the record and explained to Plaintiff that he would consider an opinion from Dr. Oddis as duplicative unless something unusual showed up in the examination. To the extent that the ALJ considered Dr. Oddis' opinion and found that it was factually inconsistent with the existing record, that finding is supported by substantial evidence.

While Plaintiff cites to other evidence in the record to support a different conclusion than that reached by the ALJ as to Listing 4.05, the "issue before [the Court] is whether there was substantial evidence to support the [ALJ's] decision, not whether there could be substantial evidence in the record to support a different decision." *Rodriguez ex rel. R.C. v. Berryhill*, 2021 WL 5023951 at *7 (11th Cir. 2021) (citing *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1282 (11th Cir. 2004)). "Under a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citation omitted). The Court finds that substantial evidence supported the ALJ's consideration and evaluation of Listing 4.05.

**Low Vision and RFC**

Plaintiff argues that the ALJ erred because he failed to consider Plaintiff's low vision in formulating her assessed RFC. (Doc. 16, pp. 8-9). Plaintiff also appears to argue without elaboration that the ALJ failed to order a consultative examination. *Id.* at 8.

As an initial matter, Plaintiff asserts that the ALJ had to "accord substantial or considerable weight to the opinions of treating physicians, absent 'good cause' to the contrary." *Id.* (citations omitted). However, the Regulations governing Plaintiff's claim were amended for claims filed on or after March 27, 2017, and the Eleventh Circuit recently held in a published opinion that the amended Regulations validly abrogated its prior precedent for applying the treating-physician rule. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022). Plaintiff's claim was filed on May 31, 2018. (Tr. 16). Accordingly, the ALJ was not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 416.920c(a).

The ALJ discussed the evidence relating to Plaintiff's vision, noting that her vision with correction was 20/80 in her right eye and 20/200+ in her left, as of October 2018. (Tr. 22). However, her vision was found to be 20/50 in her right eye, and hand motion in her left eye on September 30, 2019, and the examining doctor found "mild changes to normal findings in the cornea, retina, and visual fields." (Tr. 23). The ALJ stated that it "is not SSA procedure to find that monocular vision causes more than moderate functional limitations." (Tr. 22). The ALJ also noted that Plaintiff "viewed social media" and that she "enjoyed crocheting, making necklaces, and reading[.]" (Tr. 23).

The ALJ's findings are consistent with the evidence. Plaintiff testified at her hearing before the ALJ that she very rarely drives, but if she does, it is to go to the grocery store, but she does not

do so often. (Tr. 142). In her function report, Plaintiff reports that she reads as a hobby and that she watches television with her daughter daily. (Tr. 404). In a third-party function report, Plaintiff's friend says that Plaintiff reads and crochets. (Tr. 423). Another friend reports that Plaintiff does "small crafts" and uses a computer for social activities with others. (Tr. 451). As to the medical evidence, on October 5, 2018, Plaintiff's vision was 20/80 in her right eye and 20/200+ in her left eye. (Tr. 1095). On September 30, 2019, Plaintiff had 20/50 vision in her right eye and hand motion in her left eye, and mild to moderate findings otherwise. (Tr. 1662-63). Accordingly, the ALJ's findings as to the evidence relating to Plaintiff's visual impairment are supported by substantial evidence.

The ALJ explicitly stated that he considered all of Plaintiff's impairments, whether severe or not, in making his findings as to Plaintiff's RFC. (Tr. 24). Plaintiff's speculation that the ALJ did not "take into account" Plaintiff's low vision in assessing Plaintiff's RFC is simply that: speculation. Finally, Plaintiff does not indicate what other restrictions the ALJ could have imposed, other than a finding that Plaintiff was disabled. (Doc. 16, p. 9). However, the issue before the Court is whether there was substantial evidence to support the ALJ's decision, not whether there is substantial evidence in the record to support a different decision. *Rodriguez ex rel. R.C.*, 2021 WL 5023951 at *7 (citing *Shinn ex rel. Shinn*, 391 F.3d at 1282).

Plaintiff self-reported driving and engaging in activities which do not suggest that she had a vision impairment beyond that which the ALJ found from the evidence. The ALJ considered the evidence and made findings therefrom, which findings are supported by substantial evidence. Accordingly, the ALJ's findings as to Plaintiff's vision impairment in assessing her RFC are supported by substantial evidence.

To the extent that Plaintiff may argue without elaboration that the ALJ failed to develop the record by ordering a consultative examination (Doc. 16, p. 8), an ALJ has "a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)). Where there are no "evidentiary gaps that result[] in unfairness or clear prejudice[,]" an ALJ is not required to order a consultative examination. *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016) (first citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); and then citing *Ingram*, 496 F.3d at 1269). As discussed, *supra*, the Court finds that the record contains sufficient evidence of Plaintiff's vision and impairments related thereto such that the ALJ made an informed decision.

Having considered the ALJ's decision and all of the evidence in the record, the Court finds that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

As the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence, the Commissioner's decision is **AFFIRMED** pursuant to Sentence Four of § 405(g).

**SO ORDERED**, this 8th day of September, 2022.

s/ ***THOMAS Q. LANGSTAFF***
UNITED STATES MAGISTRATE JUDGE